**LAWYERS SURETY CORPORATION, Appellant,**

v.

**STATE of Texas, Appellee (2 Cases).**

**Nos. 3–87–071–CV, 3–87–072–CV.**

Court of Appeals of Texas, Austin.

May 4, 1988.

William O. Holston, Jr., Dallas, for appellant.

Jim Mattox, Atty. Gen., Joe Foy, Jr., Asst. Atty. Gen., Austin, for appellee in No. 3–87–071–CV.

Jim Mattox, Atty. Gen., Diane Weidert Morris, Asst. Atty. Gen., Austin, Fred Whitaker, Carthage, for appellee in No. 3–87–072–CV.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

GAMMAGE, Justice.

Lawyers Surety Corporation ("Lawyers Surety") appeals from two district court judgments awarding the Texas Railroad Commission (the "Commission") the face amounts of two performance bonds required to ensure the proper plugging of inactive oil and gas wells. We will reverse those portions of the judgments against Lawyers Surety, and here render judgment that the Commission take nothing against Lawyers Surety.

Pursuant to Statewide Rule 14(b)(2), the Commission requires the commencement of plugging operations on each dry or inactive well within ninety days after drilling or production has ceased. 16 Tex.Admin.Code § 3.14 (1986). Extensions of time may be granted if the well is not a pollution hazard and the operator provides a viable plan for utilizing the well within a reasonable time or posts a bond or other financial security in an amount "to ensure that the Commission will not have to plug the well with state funds." *Id.*

In our cause No. 3-87-071-CV, Kenneth R. Hand ("Hand") as principal and Lawyers Surety as surety executed a performance bond to obtain an extension of time to plug *under Rule 14(b)(2).* The bond required that eight oil and gas wells in Starr County be maintained in compliance with Statewide Rule 14 by plugging the wells, restoring them to production, or obtaining or continuing a Rule 14(b)(2) exception for each well. These conditions were to be met at all times during the terms of the bond, such term beginning December 10, 1984, and ending December 14, 1985.

In our cause No. 3-87-072-CV, Fred Whitaker d/b/a Whitaker Oil Company ("Whitaker") as principal and Lawyers Surety as surety executed a similar performance bond requiring the A.W. Champion No. 1 well in Harrison County be maintained in compliance with the same conditions for the period July 2, 1984, through July 16, 1985.

The remedy recited in both bonds for the breach of their conditions states:

> If any well subject to this bond is not maintained in compliance with the conditions listed above, then *the estimated cost for the plugging* of that well (an amount otherwise impossible to determine as to an exact amount) *shall be paid to the Railroad Commission* at Austin, Texas, within seven days after receipt of written demand therefor, which demand shall be mailed by registered or certified U.S. mail to the addresses shown below, and the bond shall remain in full force and effect for the remaining wells. The State, through its employees or agents, may remedy any such non-compliance without waiving any of its rights to seek reimbursement pursuant to this bond for its actual costs up to the amount listed as the estimated cost of plugging. (emphasis added).

The estimated cost to plug the eight wells in Hand, No. 3-87-071-CV, is $32,000 and the face amount of the bond is $35,000. The estimated cost to plug the only well in Whitaker, No. 3-87-072-CV, is $13,368 and the face amount of that bond is $13,368.

It is undisputed that the wells subject to these bonds were not maintained in compliance with the bond conditions. In Hand's case, seven of the eight wells were transferred to another operator during the term of the bond, but because the new operator did not obtain Rule 14(b)(2) exceptions for the wells during the term of the bond, Hand was still in breach of the bond conditions.

In Whitaker, the Rule 14(b)(2) exception to the well-plugging requirement expired on May 19, 1985. At that time the well had not been plugged or restored to production. The well was subsequently plugged by Whitaker on March 11, 1986, almost ten months after the conditions of the bond were breached, nearly eight months after the bond expired on July 16, 1985, and more than four months after the Commission's original petition was filed on November 7, 1985.

In two suits the Commission sued Hand, Whitaker, and Lawyers Surety seeking the face amounts of the respective bonds. Hand, Whitaker, and Lawyers Surety filed general denials and Lawyers Surety sought indemnity from Hand and Whitaker. After

separate bench trials, the district court entered judgment against Hand and Lawyers Surety for the $35,000 face amount of their bond, prejudgment interest, attorney's fees, and court costs; against Whitaker and Lawyers Surety for the $13,368 face amount of their bond, prejudgment interest, attorney's fees, and court costs; and against Hand and Whitaker to indemnify Lawyers Surety for the breach of the respective bonds. Only Lawyers Surety appeals the judgments below.

Lawyers Surety essentially complains the district court erred in rendering judgment against it for the face amount of the respective bonds because there is no evidence the Commission has sustained actual damage.

Under the common law, "well-plugging performance bonds are enforceable only to the extent of the actual damages incurred in plugging." *State v. Alpha Oil and Gas, Inc.*, 31 Tex.Sup.Ct.J. 270 (March 19, 1988). The issue then is whether the "forfeiture provisions" of the statutory bonds sued upon in Nos. 3–87–071–CV and 3–87–072–CV are authorized by applicable statutes, rules, or regulations. *Id.*

The bonds state they are required *pursuant to* Statewide Rule 14(b)(2) and §§ 91.-101 and 85.202 of the Tex.Nat.Res.Code Ann. (1978 & Supp.1988). Under this statutory and regulatory framework, the Commission is empowered to adopt and enforce rules to protect the waters of Texas from pollution associated with inactive wells. *Id.* at § 91.101(3). The Commission may require a bond from any operator seeking exception to the Commission's well-plugging requirements. *Id.* at § 91.103(b). This bond may be "in an amount equal to the cost of plugging each well or in a blanket amount designed to assure the proper plugging of all wells drilled, to be drilled, or to be operated in this state." *Id.* at § 91.104. Most importantly, "[e]ach bond shall be conditioned that the operator will plug and abandon the well in accordance with the law of the state and the rules and orders of the commission." *Id.* at § 91.105.

Our reading of these statutes reveals that the legislature has not specifically provided that well-plugging bonds be penal, but instead has authorized the Commission to adopt rules and orders upon which well-plugging bonds may be conditioned. We look to the Commission's rules to determine whether they authorize the "forfeiture provisions" in the bonds before us.

The Commission relies on Statewide Rule 14(b)(2) which states in pertinent part:

(A) The Oil and Gas Division Director or his delegate may administratively grant an extension of time if the well is not a pollution hazard; and

   \*    \*    \*    \*    \*    \*

(ii) The operator posts a performance bond or other form of financial security in an amount acceptable to the staff to ensure that the Commission will not have to plug the well with state funds.

16 Tex.Admin.Code § 3.14 (1986). This rule speaks in terms of financial security rather than penalty, the expressed intent of the rule being to ensure enough money will be on hand to compensate the Commission if a well is plugged with state funds.

While the Commission may have the authority to adopt rules requiring the forfeiture of the face amount of a well-plugging bond upon breach of its conditions, it has not done so. *State v. Alpha Oil and Gas, Inc., supra,* at note 4. We conclude the forfeiture provisions of the bonds in question are not required by the applicable statutes, or rules or regulations adopted pursuant thereto, and are therefore void. *See Meador v. Adams,* 76 S.W. 238, 240 (Tex. Civ.App.1903, no writ).

In the absence of some right to a penalty prescribed by statute or authorized rule or regulation, with no common-law right to liquidated damages, and without proof of actual damages, the Commission must take nothing against Lawyers Surety.

We reverse the portions of the judgments below in our cause Nos. 3–87–071–CV and 3–87–072–CV against Lawyers Surety and here render judgment that the

Commission take nothing against Lawyers Surety.